## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| A. J. HOOKER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-2161 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND OPINION

Petitioner, A. J. Hooker, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a 2001 state felony conviction for delivery of a controlled substance. Respondent filed a motion for summary judgment, (Docket Entry No. 21), with a copy of the state court record.   Although Hooker did not file a response,[1] he previously filed three supplements to his federal petition and a motion for summary judgment. (Docket Entry Nos. 3, 8, 9, & 11).  Based on careful consideration of the pleadings; the motions; the record; and the applicable law, this court grants respondent's motion for summary judgment and denies Hooker's motion for summary judgment.  By separate order, this court enters final judgment dismissing this case.  The reasons are set out below.

---

[1]   In letters asking about the status of this case, Hooker acknowledges that he did not file a response to the respondent's motion for summary judgment.  (Docket Entry Nos.  25 & 26).

## I.   Background

A state court jury found Hooker guilty of the felony offense of delivery of a controlled substance.   (Cause Number 876881).   The jury found true two enhancement paragraphs alleging a 1991 conviction for unauthorized use of a motor vehicle (Cause Number 614782) and a 1994 conviction for possession of cocaine (Cause Number 94-07584).   On December 4, 2001, the jury sentenced Hooker to a fifteen-year prison sentence.   The First Court of Appeals of Texas affirmed Hooker's conviction on March 27, 2003.   *Hooker v. State,* No. 01-01-01204-CR, slip op. (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd) (not designated for publication).   The Texas Court of Criminal Appeals refused Hooker's petition for discretionary review on September 10, 2003.   Hooker filed an application for state habeas corpus relief on August 30, 2004, which the Texas Court of Criminal Appeals denied without written order, on findings of the trial court, without a hearing on June 1, 2005.   *Ex parte Hooker,* Application No. 58,037-02 at cover.

On June 23, 2005, this court received Hooker's federal petition.   Hooker contends that his conviction is void for the following reasons:

(1)   the prosecution improperly introduced evidence of extraneous offenses during voir dire and the guilt/innocense phase of trial;

(2)   his trial counsel rendered ineffective assistance because she did not allow him to testify in his own defense;

(3)   his trial counsel rendered ineffective assistance by failing to request a competency hearing;

(4)    his trial counsel rendered ineffective assistance by failing to communicate to the jury that no proof of an offer to sell was presented by the prosecution; and

(5)    the evidence presented at trial was insufficient to support his conviction for delivery of a controlled substance by actual transfer or offering to sell.

(Docket Entry No. 1, Petition for a Writ of Habeas Corpus, pp. 7, 11-12; Docket Entry No. 8, Petitioner's Memorandum, pp. 1-5; Docket Entry No. 11, Petitioner's Motion for Summary Judgment, pp. 1-3).

Although the respondent argues that Hooker's second, third, and fourth claims are unexhausted and procedurally barred, (Docket Entry No. 21, Respondent's Motion for Summary Judgment, pp. 6-10), the respondent also argues that Hooker's claims lack merit. This court finds that Hooker's claims lack merit and does not reach the issues of exhaustion or procedural bar.

## II.    The Applicable Legal Standards

Hooker's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).   Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits."  An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

The AEDPA provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably

applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. In deciding whether a state court's application was unreasonable, this court considers whether the application was "objectively unreasonable." *Id.* at 1495; *Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000). Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules. Section 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Hooker is a *pro se* petitioner. In this circuit, *pro se* habeas petitions are construed liberally and are not held to the same standards as pleadings filed by lawyers. *See Martin*

*v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh,* 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981).  This court broadly interprets Hooker's state and federal habeas petitions. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## III.    The Trial Court Record

The trial record discloses the following evidence.  On May 9, 2001, Arnold Alvarez, an undercover Houston Police Department narcotics officer, was making preparations to execute a search warrant for drugs at an apartment complex in Harris County, Texas. (Reporter's Record, Vol. III, pp. 9-11).  Alvarez had trouble locating the apartment.  (*Id.* at 14).  Hooker approached Alvarez while he was looking for the apartment and asked what he was looking for.  Alvarez believed that Hooker wanted to sell him drugs and replied that he was looking for "a twenty," street slang for twenty dollars worth of crack cocaine.  (*Id.* at 14).  About that time, a Hispanic man – Hooker is African-American – approached Alvarez and offered to sell him drugs.  (*Id.* at 15).  Hooker and the Hispanic man began to argue about whose drugs were better.  (*Id.* at 15).  Alvarez gave Hooker a $20 bill with a prerecorded serial number.  (*Id.* at 15,17).  Hooker asked Alvarez to go with him to an apartment to get the drugs.  Alvarez declined to go inside the apartment with Hooker.  (*Id.* at 15-16).  Alvarez testified that he refused because of safety concerns.  (*Id.* at 15-16). Alvarez testified that in his experience, drug transactions usually involved two individuals: one individual usually gets business on the street while the other individual stays inside a location such as an apartment with money and drugs.  (*Id.* at 17).  Alvarez testified that

because of this common set-up, the money given to purchase drugs is sometimes not found on the person who delivers the drugs. (*Id.* at 17, 29-30).

Hooker went into the apartment with Alvarez's money and returned with one crack rock. (*Id.* at 18). Alvarez then walked out of the apartment complex and used his cell phone to call his partner to give him a description of the transaction. (*Id.* at 21-22, 43).

Alvarez's partner, Brian Bufkin, was also an undercover narcotics officer with the Houston Police Department. While Alvarez was talking to Hooker, Bufkin was driving up and down the street in front of the apartment complex, maintaining surveillance. (Reporter's Record, Vol. III, pp. 38-41). Bufkin had to circle the block several times because the complex faced a major roadway and there was no place to park and watch the drug transaction. (*Id.* at 41). Bufkin did see Alvarez meet with Hooker and could see them when he drove by. (*Id.* at 42-43).

Once he got the call from Alvarez, Bufkin called a nearby patrol unit, described what Hooker looked like, and waited for the unit to arrive. (*Id.* at 43-44). The patrol unit placed Hooker under arrest. Bufkin took custody of the cocaine and tested and weighed it. (*Id.* at 45, 48-49). The total weight was .22 grams. (*Id.* at 48). Both Alvarez and Bufkin watched to make sure the patrol officer, J. Aguirre, arrested the correct man. (*Id.* at 21-22, 45, 49). Hooker was the only African-American man in the parking lot and was wearing a distinct blue and white striped shirt, which is clearly visible in his booking photo. (*Id.* at 22-23, 49, 51, 55, 58, 60-62; Vol. IV, State's Exhibit 2). All three of the officers identified Hooker as the man involved in the drug transaction and the man who was arrested. (*Id.* at 13, 42, 56).

Kamika Reach, a criminalist with the Houston Police Department, tested the cocaine. (*Id.* at 68).  She testified that including any adulterants and dilutants, the cocaine weighed .22 grams.  (*Id.* at 69).  She also testified that the rock was 54.9% pure cocaine.  (*Id.* at 69).

## IV.    Analysis

### A.    The Issue of the Sufficiency of the Evidence

Hooker challenges the sufficiency of the evidence to support his conviction.  On federal habeas review of a state court conviction, the standard for the sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).  The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, as long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Stevenson,* 126 F.3d 662, 664 (5th Cir. 1997).  To determine whether the evidence is sufficient to support a state criminal conviction, a federal habeas court looks to state law for the substantive elements of the relevant criminal offense. *Jackson,* 443 U.S. at 324 n.16; *Dupuy v. Cain,* 201 F.3d 582, 589 (5th Cir. 2000), *cert. denied,* 121 S. Ct. 885 (2001).  Either direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction.  *Schrader v. Whitley,* 904 F.2d 282, 287 (5th Cir.), *cert. denied,* 498 U.S. 903 (1990).  A federal court may not substitute its own judgment about the credibility of witnesses for that of the state

courts. *Marler v. Blackburn,* 777 F.2d 1007, 1012 (5th Cir. 1985). Because credibility choices are for the factfinder, they must be resolved in favor of the jury's verdict. *United States v. Nguyen,* 28 F.3d 477, 480 (5th Cir. 1994); *United States v. Morgan,* 117 F.3d 849, 854 n.2 (5th Cir.), *cert. denied,* 118 S. Ct. 641 (1997).

The indictment charged Hooker with the offense of knowing and intentional delivery of a controlled substance by each method defined as "delivery" under the Health and Safety Code: (1) by offer to sell, (2) by actual transfer, and (3) by constructive transfer. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (Vernon Supp. 2003). The trial court granted Hooker's motion for an instructed verdict as to constructive delivery, but submitted to the jury the issues of delivery by offer to sell and by actual transfer. (Reporter's Record, Vol. III, p. 72). Hooker was convicted of delivery of a controlled substance. The relevant portions of the Texas Health and Safety Code provide in part:

> (a)    Except as authorized by this chapter, a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1.

> (b)    An offense under Subsection (a) is a state jail felony if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, less than one gram.

TEX. HEALTH AND SAFETY CODE § 481.112(a) & (b).

> (8) "Deliver" means to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship. The term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia.

TEX. HEALTH AND SAFETY CODE § 481.002(8).

To prove that Hooker committed the offense of delivery of cocaine, the State was required to show that on May 9, 2001, Hooker unlawfully, intentionally, and knowingly delivered by actual transfer and by offering to sell a controlled substance, namely cocaine, weighing less than one gram by aggregate weight, including any adulterants or dilutants. TEX. PENAL CODE ANN. § 481.112.

Hooker argues there was no evidence to establish delivery by actual transfer or an offer to sell. (Docket Entry No. 11, Petitioner's Motion for Summary Judgment, p. 1; Docket Entry No. 17, Motion to Overturn Verdict, p. 1).   Other than Officer Alvarez's uncorroborated testimony, Hooker claims that there is no evidence that he actually gave Officer Alvarez crack.  Hooker also argues there was no "buy money," or a serial number of a bill used to buy the crack.  Hooker also contends there was no evidence on the element of an offer to sell other than Officer Alvarez's uncorroborated statement. (Docket Entry No. 8, Petitioner's Amended Memorandum, p. 1).   He points out that Officer Bufkin did not see the actual transaction.

Hooker raised this claim on direct appeal.  That court found:

> Alvarez told appellant that he wanted to buy crack cocaine and appellant said he could get it.  Alvarez paid appellant $20, appellant went into a nearby apartment, and appellant hand-delivered a rock of crack cocaine to Alvarez.  Bufkin saw Alvarez and appellant together but did not witness the actual transfer.  For safety reasons, Alvarez did not go into the apartment with appellant.  He also did not note which apartment appellant entered.  A search of appellant after his arrest did not produce either the marked money or drugs.

The record reveals two discrepancies. First, during direct examination, Alvarez described a chaotic scene: "[T]here was so much activity, so much traffic there, everybody was like, you want a twenty, you want a twenty." On re-cross-examination, when asked "When you were walking through the complex, everybody comes up to you, there was [sic] two people saying buy mine, no buy mine?" Alvarez responded, "It was just [appellant] and another Hispanic guy." Second, Alvarez testified that he gave appellant the money, then appellant delivered the cocaine. However, the official offense report indicates that appellant gave Alvarez the cocaine, then Alvarez gave appellant the money. Bufkin acknowledged this differing sequence of events and agreed that the offense report is crucial. Alvarez suggested Bufkin simply misunderstood which event occurred first. The report was not admitted into evidence. The State contends that appellant completed an actual transfer when he took the money and hand-delivered the drugs. We agree. The term "actual transfer" is not defined for purposes of the Controlled Substances Act. *Nevarez v. State,* 767 S.W.2d 766, 768 (Tex. Crim. App. 1989). When statutory terms or phrases are not defined, they are ordinarily given their plain meaning without regard to distinction between construction of penal laws and laws on other subjects, unless the act clearly shows that they were used in some other sense. *Id.* An "actual transfer" consists of "transferring the real possession and control of a controlled substance from one person to another person." *Id.* No matter how few or many people were at the scene, that fact does not undermine Alvarez's testimony that appellant was the person who actually transferred the possession and control of the cocaine to him or Bufkin's observation of Alvarez and the appellant together. In addition, all three officers testified that appellant was the only African-American male in the vicinity and that he was wearing a distinctive striped shirt. Likewise, whether payment preceded or followed the drug delivery is immaterial. No matter the order of the exchanges, the money was paid and the cocaine was handed over. Moreover, there was testimony that appellant took the money, went into an apartment, and returned with the cocaine. The jury could reasonably have concluded that appellant left the marked $20 bill in the apartment from which he obtained the cocaine.

As the State notes, the presence of drugs or money on a defendant's person is not an element of the offense of delivery, nor is corroborating testimony necessary to support a conviction. *See Allen* v. *State,* 39 S.W.2d 428, 430-31 (Tex. App—Houston [1st Dist.] 2001, no pet.). The jury was entitled to believe the officers' testimony despite the discrepancies, and it evidently did so. We hold that the jury could rationally have found the essential elements of the crime beyond a reasonable doubt and that the proof of guilt is not so obviously weak as to undermine confidence in the jury's determination or so greatly outweighed by contrary proof as to indicate that a manifest injustice has occurred.

We overrule point of error one.

*Hooker v. State,* No. 01-01-01204-CR, slip op. at 5-8 (Tex. App. -- Houston [1st Dist.] 2003, pet. ref'd.) (not designated for publication).

The record evidence supports the conclusion that the State proved all the elements of possession of a controlled substance beyond a reasonable doubt. The evidence at trial showed that on May 9, 2001, Officer Alvarez went to an apartment complex to conduct a narcotics investigation. Hooker approached Officer Alvarez and asked if he was looking for something. Officer Alvarez replied that he was looking for a "20." Hooker took a $20 bill from Alvarez, went into an apartment, and returned with a crack rock. Field testing indicated the presence of cocaine. A Houston Police Department chemist testified that the rock tested positive for cocaine. The aggregate weight of the substance was .22 grams. The physical evidence admitted included "a pretty good size twenty dollar rock" of crack cocaine. (Reporter's Record, Vol. III, p. 18). Officer Bufkin observed Officer Alvarez and Hooker walking, talking, and gesturing with their hands. There was corroborating evidence of an

offer to sell.  Hooker's claim based on a challenge to the sufficiency of the evidence fails on the merits.  The evidence, in the light most favorable to the verdict, provided an ample basis for a rational trier of fact to find the elements of the crime, beyond a reasonable doubt.

The state court's decision as to the sufficiency of the evidence reasonably applied the law to the facts, consistent with clearly established federal law.  Hooker has not shown a basis for the relief he seeks.  28 U.S.C. § 2254(d)(1).

### B.    The Claim of Ineffective Assistance of Trial Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and the petitioner suffered prejudice as a result.  *Strickland v. Washington,* 466 U.S. 668 (1984); *Martin v. Cain,* 246 F.3d 471, 477 (5th Cir. 2001).  The district court may dispose of a claim if counsel either rendered reasonably effective assistance or no prejudice can be shown.  A court evaluating a claim of ineffective assistance need not address the reasonableness component first.  If a petitioner fails to make one of the required showings, the court need not address the other.  *Strickland,* 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the court must indulge a strong presumption that the performance falls within the "wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy."  *Strickland,* 466 U.S. at 689; *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir. 1993).  If counsel's action is based on well-informed strategic decisions, it is "well within the range of practical choices not to be second-guessed."  *Rector v. Johnson,* 120 F.3d 551, 564 (1997)

(quoting *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied*, 509 U.S. 921 (1993)).  As to the prejudice portion of the inquiry, a convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  An attorney's strategic choices based on information supplied by the defendant and gathered from an investigation of the relevant law and facts "are virtually unchallengeable." *Id.* at 691.

Hooker asserts that trial counsel, Susan Jake Perret, rendered ineffective assistance at trial in three respects.  Each is examined below.

### 1.    The Claim that Counsel Denied Hooker His Right to Testify

Hooker argues that his counsel rendered ineffective assistance by not allowing him to testify on his own behalf.  As to prejudice, Hooker asserts that if he had been allowed to testify about the circumstances surrounding his meeting with Officer Alvarez on May 9, 2001, he would have testified that he was standing in the door of his brother-in-law's apartment when Officer Alvarez summoned him and he was arrested.  Hooker asserts that he did not know why he was being arrested until he was transported to jail.  Hooker alleges that the officers singled him out because he was the only black male in the vicinity. *Id.* at 44-45.

The record shows that counsel had the following exchange with Hooker before the court and out of the jury's presence:

> MS. PERRET:     Okay. Mr. Hooker, we've discussed you have a right to testify, it's your call, we discussed the pros and cons, and what's the decision you have made?

DEFENDANT:        I'm not going to take the stand.

MS. PERRET:       Okay. And part of it is because of the prior convictions that would come out. Correct?

DEFENDANT:        Right.

MS. PERRET:       Have you been satisfied with the way I've defended you though?

DEFENDANT:        Yes, ma'am, I have.

MS. PERRET:       And you agree with our decision?

DEFENDANT:        Right.

MS. PERRET:       Okay. Nothing further.

(Reporter's Record, Vol. III, p. 73).

During state habeas proceedings, counsel provided an affidavit in which she stated:

> I was very aware of Mr. Hooker's prior criminal history. In addition to being aware of all of the prior convictions legally used against Mr. Hooker at punishment, I was aware from my many discussions with Mr. Hooker that he also had an Aggravated Perjury conviction that he had been incarcerated for in Louisiana. I also knew that the State was not aware of this information but I still could not put Mr. Hooker on the stand because if the State asked about "was that all of his prior felonies or times in prison" then Mr. Hooker would either have to tell the jury about his aggravated perjury or commit another perjury by not mentioning it. I could not put Mr. Hooker or myself in that position. Needless to say, the fact that Mr. Hooker had a conviction for Aggravated Perjury kept us from being able to put him on the stand at the guilt or punishment phase. Not only would the jury finding out about an Aggravated Perjury torpedo his truth and veracity, it would also surely add to the amount of punishment time the jury would give Mr. Hooker. Another reason he did not take the stand was that one of his priors was a drug case. I did file a *Theus* motion to not

have his priors used against him on the stand but the judge
denied my motion.

*Ex parte Hooker*, Application No. 58,037-02 at 36-37.

Hooker filed a rebuttal to counsel's affidavit.  *Ex parte Hooker,* Application No.

58,037-02 at 41-47.   He also attached a memorandum in support of his rebuttal.   *Id.*,

Attachment, 1-20.  Hooker stated:

> Let's look at her misleading tactic in not allowing him to weigh
> rationally the advantage of taking the stand and speaking up for
> himself.   Sure she made it a point to ask him on the record
> what's his choice both in affidavit and page 73 of the R.R. (vol
> 3 of 4).  But she was equally quick to disillusion applicant about
> the fact his priors made [sic] come into question before the jury
> at guilt?  And punishment phase Ms. Perret supposedly being
> competent knows that yes after a finding of guilt priors can be
> used . . . It was wrong for Ms. Perret to destroy applicant's
> ability to weigh out the advantages of taking the stand by
> throwing up his priors.

*Ex parte Hooker,* Application No. 58,037-02 at 42-43.

Hooker is apparently arguing that his prior convictions could not be mentioned during

the guilt/innocence phase.   Texas law allows the prosecution to use prior convictions for

impeachment purposes.[2]   The record shows that the prosecutor provided Hooker with notice

---

[2]  Rule 609 of the Texas Rules of Evidence provides in relevant part:

(a)     General Rule. For the purpose of attacking the credibility of a witness,
evidence that the witness has been convicted of a crime shall be admitted if elicited
from the witness or established by public record but only if the crime was a felony or
involved moral turpitude, regardless of punishment, and the court determines that the
probative value of admitting this evidence outweighs its prejudicial effect to a party.
(b)     Time Limit. Evidence of a conviction under this rule is not admissible if a
period of more than ten years has elapsed since the date of the conviction or of the
release of the witness from the confinement imposed for that conviction, whichever

of intent to introduce evidence of prior convictions for impeachment purposes.  (Clerk's Record, Vol. I, pp. 34-35).

The record shows that counsel filed a motion for Hooker to testify free of impeachment convictions. (Reporter's Record, Vol. II, p. 7).  The prosecutor responded that he had the judgment and sentence documentation relating to the convictions alleged in the enhancement paragraphs.  The prosecutor stated that he was aware of other felonies but he had not received the judgments and sentences relating to them.  (Reporter's Record, Vol. II, p. 7).  The trial court denied the defense motion for Hooker to testify free from impeachment by questions about his 1991 conviction for possession of cocaine (Cause Number 614782) and his 1994 conviction for unauthorized use of a motor vehicle (Cause Number 94-07584).  (*Id.* at 8-9).  The trial court granted the motion to exclude impeachment evidence of the other convictions, absent additional proof.  (*Id.* at 9).

The state habeas court found that "[t]he representation afforded Applicant was sufficient to protect his right to reasonably effective assistance of counsel in trial and on direct appeal." *Ex parte Hooker*, Application No. 58,037-02 at 49, Finding #4.  The Court of Criminal Appeals expressly based its denial of habeas relief on this finding.  These

---

is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

. . .

(f)      Notice.  Evidence of a conviction is not admissible if after timely written request by the adverse party specifying the witness or witnesses, the proponent fails to give to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

credibility determinations are entitled to a presumption of correctness. 28 U.S.C.

§ 2254(e)(1); *Moore v. Johnson,* 194 F.3d 586, 604 (5th Cir. 1999) (op. on reh'g). Hooker

has not produced clear and convincing evidence to rebut this finding.

In assessing the reasonableness of counsel's performance, this court indulges a strong

presumption that counsel's advice to Hooker not to testify fell within the wide range of

reasonable professional assistance, and that decision could be considered sound trial strategy.

Counsel was aware of Hooker's prior convictions and that some would, and the others might,

be used to impeach him if he testified. Counsel's advice that Hooker not testify was a

strategic decision, well within the range of practical choices, not to be second-guessed.

Because Hooker cannot show deficient performance, this court need not examine prejudice.

The state court's decision was not contrary to clearly established federal law. Hooker

is not entitled to habeas relief. 28 U.S.C. § 2254(d)(1).

### 2.    The Claim that Counsel Failed to Ask for a Competency Hearing

Hooker claims that his counsel was ineffective for failing to request a competency

hearing. In his state habeas application, Hooker argued that his decision to go to trial in his

jail uniform was evidence of his incompetency. *Ex parte Hooker,* Application No. 58,037-02

at 16. Hooker states that he is illiterate and has an IQ of 72. *Id.* at 17.

A defendant is presumed to be competent to stand trial unless proven incompetent by

a preponderance of the evidence. TEX. CODE. CRIM. PROC. ANN art. 46B.003(b) (Vernon

Supp. 2005). A defendant is incompetent to stand trial if he lacks "sufficient present ability

to consult with [his] lawyer with a reasonable degree of rational understanding; or . . . a

18

rational as well as factual understanding of the proceedings against [him]." *Id.* at (a). Either party or the trial court may suggest by motion that the defendant may be incompetent to stand trial. *Id.* at 46B.004(a). If bona fide evidence from any source suggesting a defendant's incompetency is brought to the trial court's attention, the court must determine by informal inquiry whether the evidence would be sufficient to support a finding that the defendant may be incompetent to stand trial. *See id.* at 46B.004(b)-(c). Generally, bona fide evidence exists only if the evidence indicates recent severe mental illness, moderate mental retardation, or truly bizarre acts by the defendant. *McDaniel v. State,* 98 S.W.3d 704, 710 (Tex. Crim. App. 2003) (citing *Alcott v. State,* 51 S.W.3d 596, 602 (Tex. Crim. App. 2001)).

In her affidavit to the state habeas court, counsel testified:

> I was in Court with Mr. Hooker over ten times. At no time did I have any concerns about his mental competency. He was always able to discuss his case with me with a high degree of rational certainty and he was able to discuss his case, his priors and any defenses with me every time. We spent a lot of time talking. He wanted to go to trial in his jail clothes despite my having clothes in the courtroom for him to wear (in the old courthouse, there were always clothes in the back for defendants to wear, but Mr. Hooker refused) and in spite of the judge admonishing on the record about his choice of wearing his jail clothes. While I believe this was a stupid decision and advised against it, it was not in any way a mentally incompetent decision.

*Ex parte Hooker*, Application No. 58,037-02 at 37.

The state habeas court explicitly found that "3. Since Applicant was legally competent to stand trial in Cause Number 876881, then the trial court was not required to conduct a competency hearing." *Id.* at 49, Finding #3. The Court of Criminal Appeals expressly based

its denial of habeas relief on this finding. Hooker has not produced clear and convincing evidence to rebut this finding. 28 U.S.C. § 2254(e)(1); *Moore v. Johnson,* 194 F.3d 586, 604 (5th Cir. 1999) (op. on reh'g).

The record shows that counsel was appointed to represent Hooker on May 11, 2001. (Clerk's Record, Vol. I, p. 66). The trial began on December 3, 2001 and ended on December 4, 2001. (*Id.* at 67-69). Counsel had an opportunity to observe Hooker's conduct over this period of nearly seven months. Based on her observations and discussions with Hooker, she determined that he had a present ability to consult with his lawyer with a reasonable degree of rational understanding, and a rational as well as factual understanding of the proceedings against him. Counsel had no basis on which to request a competency hearing. Counsel's decision not to request a competency hearing was well informed.

Hooker offers nothing more than conclusory assertions of his own incompetency. These conclusory allegations are an inadequate basis for federal habeas relief. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

The state court's decision was not contrary to clearly established federal law. Hooker is not entitled to habeas relief. 28 U.S.C. § 2254(d)(1).

### 3.    The Claim that Counsel Failed to Give a Meaningful Closing Argument

In his third ground for habeas relief based on ineffective assistance, Hooker argues that counsel failed to advise the jury of the absence of evidence on an element of the crime. (Docket Entry No. 8, Petitioner's Memorandum, p. 4). Hooker argues that there was no

evidence on the element of an offer to sell. This court has rejected Hooker's challenge to the sufficiency of the evidence based on lack of proof on the offer to sell element. The argument that Hooker asserts his counsel should have raised would have been futile. Counsel cannot be deficient for failing to press a frivolous point. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *Green v. Johnson,* 160 F.3d 1029, 1036-37 (5th Cir. 1998), *cert. denied,* 525 U.S. 1174 (1999) (citing *Sones v. Hargett,* 61 F.3d 410, 415 (5th Cir. 1995)).

Additionally, the record shows that after the State rested its case, counsel moved for an instructed verdict on the issue of whether Hooker had delivered cocaine by a constructive transfer, by actual transfer, or offer to sell. The court granted the motion for instructed verdict only as to the issue of constructive transfer. The court denied the motion as to the other methods of delivery.

During her closing argument, counsel argued that there were contradictions in the officers' testimony. (Reporter's Record, Vol. III, p. 76). She argued that the police report indicated that Hooker gave Officer Alvarez the crack and Officer Alvarez gave Hooker the money. She argued that the marked bill should have been recovered upon Hooker's arrest. (*Id.* at 77). The police report was inconsistent with Officer Alvarez's testimony that he gave Hooker the $20 bill and Hooker returned with the crack. (*Id.* at 77). Counsel argued that the lack of marked bills amounted to a lack of corroboration. (*Id.* at 77-78). Counsel made a strategic decision to cast doubt on the police officers' investigation and arrest procedures. (*Id.* at 78). She argued that Hooker could not be convicted in light of the sloppy work on the part of law enforcement. (*Id.* at 79-80). Counsel chose not to address the individual

methods of delivery.  She did not want to draw attention to Officer Alvarez's testimony about the offer to sell by Hooker and Officer Bufkin's observations during his surveillance. Nor did she wish to remind the jury about Officer Alvarez's testimony that he received cocaine from Hooker.  Counsel's decision was a reasonable trial strategy, not to be second-guessed.

Hooker is not entitled to habeas relief on this claim.

## C.    The Claim Based on Prosecutorial Misconduct

Hooker claims that the prosecutor mentioned his prior convictions during voir dire and during the guilt/innocence phase.  (Docket Entry No. 3, Petitioner's Memorandum, p. 2). Hooker did not identify the incidents of alleged prosecutorial misconduct in his federal petition.  In his state habeas application, Hooker challenged two incidents in which sentence enhancements were discussed generally. *Ex parte Hooker*, Application No. 58,037-02 at 13.

The trial court judge's voir dire of the jury on issues of enhancement began with the court stating, "Now we need to talk to you about the punishment phase because now is the only time we can find out whether you can follow the law in the punishment phase if it comes to that." (Reporter's Record, Vol. II, pp. 39-40).

The following exchange took place during voir dire:

> THE COURT: . . . Okay.  The punishment is increased for someone who is a repeat offender.  Now does anybody know what the punishment can be for someone whose been convicted of a state jail felony whose once or twice been convicted of a felony offense?  No.  Okay.  Punishment for someone whose been convicted of a state jail felony whose twice previously been convicted of a felony offense, the punishment started out

at a hundred and eighty days to two years.  With two prior convictions, the punishment is two years confinement in the penitentiary.

. . .

PROSPECTIVE JUROR:  Why are you telling us about previous convictions possibly.  We need to know this?

THE COURT:  Because the law changes the punishment range for someone whose been convicted before in every case, so if the State can prove that, then the punishment might be different.

PROSPECTIVE JUROR:  Will we know about this as the trial goes on?

THE COURT:  Yes, ma'am.

PROSPECTIVE JUROR:  We would know ahead of time.

THE COURT:  No.  You'll know when the evidence is presented.

PROSPECTIVE JUROR:  Okay.

THE COURT:  And that's why I need to be sure that you can consider all the options, depending upon what the evidence is, and I can't tell you what the evidence is right now because I'm forbidden to do that and quite frankly, I don't know a lot more about the evidence than you do right now.  So even if I knew, I couldn't tell you and I don't know what the evidence is.  But I just want to be sure that everybody is keeping an open mind of whatever the evidence will be you'll wait until you hear the evidence before you make up your mind.  That you can keep an open mind to what the options are.

. . .

PROSPECTIVE JUROR: On the prior convictions, wouldn't be necessary to know what type of conviction it was ?

THE COURT:  Yes, and I anticipate if that happens that you will know.

PROSPECTIVE JUROR:  I mean, that would have some bearing on whether the punishment would be stricter or not.

THE COURT:  Yes, Ma'am, and that's something for the jury to consider, yes.

MS. PERRET:  If it becomes relevant.

THE COURT: If it becomes relevant.  Yes, that's correct.

(Reporter's Record, Vol. II, pp. 41, 46-48).

Judge Stricklin's reference to prior convictions occurred only in the context of hypothetical questions and answers to determine whether, if previous convictions were proven, the prospective jurors were capable of enhancing a sentence under Texas law.  The references did not mention Hooker or any specific prior conviction.  The court properly stated that the State would have to prove prior convictions, if any.  During voir dire, the prosecutor questioned the prospective jurors on their ability to consider higher sentences in the event prior felony convictions were proven.  The court cautioned that prosecutors should only speak in hypothetical terms without getting into specifics.  (Reporter's Record, Vol. II, pp. 78-82).

In her affidavit to the state habeas court, counsel testified that:

> At no time during Mr. Hooker's voir dire or guilt trial were any extraneous offenses regarding him mentioned or used against him.  None existed to object to and consequently, the judge removed the extraneous offense instruction from the court's charge.  At voir dire the punishment ranges were discussed but it was never discussed that Mr. Hooker had priors, it was only

discussed "if the evidence shows," or "if relevant." We needed to know who would never consider giving certain punishments within the ranges.

*Ex parte Hooker,* Application No. 58,037-02 at 36.

Finding the facts asserted in counsel's affidavit to be true, the state habeas court found that "[n]either the State nor anyone else mentioned or discussed Applicant's prior convictions during voir dire or the guilt stage of trial. *Ex parte Hooker,* Application No. 58,037-02 at 49, Finding #1.

Contrary to Hooker's assertions, no one mentioned his extraneous offenses before the jury during the guilt/innocence phase of Hooker's trial. (Reporter's Record, Vol. III, pp. 3-92). There is no support in the record for Hooker's claim that evidence of extraneous offenses was improperly introduced during voir dire or during the guilt/innocence phase of trial.

Hooker is not entitled to habeas relief on this claim.

## V.    Conclusion

Respondent's Motion for Summary Judgment, (Docket Entry No. 21), is granted. Hooker's petition for a writ of habeas corpus is denied. This case is dismissed. Hooker's motion for summary judgment, (Docket Entry No. 11), is denied. Any remaining pending motions are denied as moot.

Under the AEDPA, a petitioner must obtain a certificate of appealability before he can appeal the district court's decision. 28 U.S.C. § 2253(c)(1). This court will grant a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right."

28 U.S.C. § 2253(c)(2). In order to make a substantial showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court has denied a claim on procedural grounds, however, the petitioner must also demonstrate that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. As the Supreme Court made clear in its recent decision in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), a COA is "a jurisdictional prerequisite," and "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." When considering a request for a COA, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id*. at 1042.

Because Hooker has not made the necessary showing, this court will not issue a COA.

SIGNED on August 30, 2006, at Houston, Texas.

Lee H. Rosenthal
United States District Judge